## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JERRI MACRI, *et al.*,

    Plaintiffs,

               v.

JAMES BROWER, *et al.*,

    Defendants.

Civil Action No.
1:21-cv-03240-SDG

## OPINION AND ORDER

This matter is before the Court on the motions to dismiss filed by

Defendants Gene Scarbrough and Shane Mims [ECF 13] and Defendant James

Brower [ECF 15]. For the following reasons, Scarbrough and Mims' motion to

dismiss is **DENIED**. Brower's motion is **GRANTED in part** and **DENIED in part**.

## I.       Background

For purposes of Defendants' motions to dismiss, the Court treats the

following well-pleaded allegations as true.[1] Plaintiffs Jerri Macri[2] and Danny

White co-owned M&M Amusement (M&M),[3] which was licensed to operate coin-

---

[1]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999).

[2]    This Plaintiff's name is spelled as both "Jerri" and "Jerry" in the First Amended Complaint. ECF 12. The Court uses the spelling employed in the case caption.

[3]    At some point, M&M changed its name to M&W Amusement, LLC. *Id.* ¶ 13.

operated amusement machines (the Machines).[4] The Machines were placed in various convenience stores throughout South Georgia.[5]

At all relevant times, Plaintiff Rebecca Macri was married to Jerri.[6] Rebecca was never involved with M&M's business or operations.[7] Plaintiff Zachary White is Danny White's son.[8] Plaintiff Alicia White is Zachary's wife.[9] Zachary was not an employee of M&M, but did assist his father with the business.[10] Alicia owned the Lucky Shamrock, where some of the Machines were located.[11]

According to Plaintiffs' pleading, the Sheriff of Tift County, Georgia, Defendant Gene Scarbrough, instructed officers to investigate Plaintiffs' businesses and stop them from making money.[12] He was allegedly angered because Jerri Macri and Danny White were making more money than the local

---

[4]   *Id.*

[5]   *Id.*

[6]   *Id.* ¶ 6.

[7]   *Id.* ¶ 15.

[8]   *Id.* ¶ 7.

[9]   *Id.* ¶ 8.

[10]   *Id.* ¶¶ 7, 16.

[11]   *Id.* ¶¶ 8, 17.

[12]   *Id.* ¶ 18.

deputies and "was not going to allow that to happen."[13] Scarbrough directed

Defendant Shane Mims, an agent for the MidSouth Narcotics Task Force, to

oversee that investigation.[14] Defendant James Brower, a Georgia Bureau of

Investigation Special Agent, was also involved in the investigation.[15]

Plaintiffs claim that the investigation instigated by Scarbrough was a

"vendetta based on sheer jealousy," and despite revealing "no evidence of

wrongdoing," Plaintiffs allege that Defendants used fabricated evidence to obtain

search warrants, arrest warrants, and indictments.[16] To this end, Mims swore out

at least nine separate affidavits from February through July 2014 attesting that Jerri

Macri was engaged in illegal commercial gambling.[17] Based on Mims's alleged

fabrications, and with the alleged assistance "and encouragement" of Brower and

Scarbrough, Mims obtained arrest warrants for Plaintiffs.[18]

---

[13]   *Id.* ¶ 31.

[14]   *Id.* ¶ 19.

[15]   *Id.*

[16]   *Id.* ¶¶ 18, 20.

[17]   *Id.* ¶ 21.

[18]   *Id.* ¶ 22.

On July 15, 2014, Plaintiffs were charged with commercial gambling and conspiracy to commit commercial gambling.[19] Their personal property, money, the Machines, and business equipment were all seized.[20] They were held for ten days because Defendants refused to accept a property bond or use of a bail bondsman to secure their release.[21] These criminal charges "commenced the malicious prosecution" of Plaintiffs and the indictments identified Mims as the "prosecutor."[22] Plaintiffs claim that, despite knowing Rebecca Macri had no involvement at all with the Machines, Scarbrough and Mims arrested her on these charges anyway.[23]

Defendants allegedly "exercised undue influence" on the district attorney by providing him with fabricated evidence to "ensure that the prosecution lasted as long as it did."[24] On December 30, 2020, the criminal cases against Plaintiffs were finally dismissed after an Order for Entry of Nolle Prosequi was filed.[25] Even

---

[19]   *Id.* ¶¶ 23, 40.

[20]   *Id.* ¶¶ 29, 37.

[21]   *Id.* ¶ 39.

[22]   *Id.* ¶¶ 23, 40.

[23]   *Id.* ¶¶ 26–27.

[24]   *Id.* ¶ 41.

[25]   *Id.* at 2.

after the nolle pros was entered, property seized from Plaintiffs' homes and businesses was never returned.[26] Jerri Macri and Danny White's license to operate the Machines was permanently confiscated.[27]

Plaintiffs initiated this action on August 10, 2021, against Brower, Scarbrough, and Mims.[28] On September 17, Plaintiffs filed their First Amended Complaint (the FAC).[29] They claim that Defendants "falsely and deliberately misrepresent[ed] evidence and legal claims in order to secure warrants that resulted" in Plaintiffs' arrests, seizures of their assets, and malicious prosecution.[30] Plaintiffs assert claims under Section 1983 for violation of their Fourth and Fourteenth Amendment rights (Count I); attorneys' fees (Count II); state-law conversion (Count III); and punitive damages (Count IV).[31]

---

[26]   *Id.* ¶ 35.

[27]   *Id.* ¶ 36.

[28]   ECF 1.

[29]   ECF 12.

[30]   *Id.* ¶ 12.

[31]   ECF 1.

Scarbrough and Mims moved to dismiss on October 13, 2021, and Brower so moved on October 14.[32] The motions are fully briefed and ripe for consideration.[33]

## II.   Discussion

### A.   Brower's immunity arguments

Plaintiffs are suing Brower in his official and individual capacities.[34] Brower describes the allegations against him as "threadbare" and argues that the claims against him are all barred by some form of immunity.[35]

#### 1.   Section 1983 claim for malicious prosecution

Brower argues that this claim is barred by sovereign immunity and Section 1983 itself to the extent he is being sued in his official capacity.[36] In his individual capacity, Brower invokes qualified immunity and asserts that Plaintiffs have failed to state a claim.[37] Plaintiffs concede that they have no viable claims against Brower

---

[32]   ECF 13 (Scarbrough/Mims); ECF 15 (Brower).

[33]   ECFs 18–21.

[34]   ECF 1, ¶ 1.

[35]   ECF 15-1, at 3, 4.

[36]   *Id.* at 5–7.

[37]   *Id.* at 7–11. The failure to state a claim argument is discussed *infra*, Section II.B.

in his official capacity.[38] This leaves their malicious prosecution claim brought against Brower in his individual capacity.[39]

### i.      Qualified immunity

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). There is no dispute that Brower's actions were discretionary.[40]

There is no qualified immunity (1) if there was a constitutional violation and (2) that violation was of a clearly established right. *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the

---

[38]   ECF 19, at 3.

[39]   *Id.*

[40]   ECF 15-1, at 10–11; ECF 19, at 5.

government actor has immunity from suit." *Id*. (*quoting Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

Brower argues that Plaintiffs cannot show any of his conduct violated clearly established law.[41] He does not argue that Plaintiffs have failed to allege a constitutional violation.[42] Plaintiffs respond that Brower is not entitled to qualified immunity because he is alleged to have been a co-conspirator in drafting the false affidavits that supported the arrest warrants and criminal prosecution.[43]

To conclude that a constitutional right has been clearly established, the Court must determine whether "a reasonable official would understand that what he is doing violates that right." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citing *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1327 (11th Cir. 2006)). Cases from the United States Supreme Court, Eleventh Circuit, and Georgia Supreme Court establish whether the law, at the time of the violation, provided "fair and clear warning" to a reasonable officer that his actions were unconstitutional. *Id*. "What matters is whether the state of the law gave the defendants fair warning that their

---

[41]   ECF 15-1, at 11.

[42]   *See generally* ECF 15-1.

[43]   ECF 19, at 6.

alleged conduct was unconstitutional." *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019) (citing *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003)).

When a plaintiff asserts that an arrest warrant is based on false evidence, he must show that the defendant acted intentionally or recklessly in making the false statement and that the statement was necessary to the finding of probable cause. *Haire v. Thomas*, 219 F. App'x 844, 846 (11th Cir. 2006) (per curiam) (citing *Franks v. Delaware*, 438 U.S. 154, 155 (1978)). Plaintiffs acknowledge this and contend that Brower is liable for statements made by Mims in the warrant affidavits because they were co-conspirators. *Haire* makes clear that there can be a constitutional violation if the officer making the false statements in the warrant affidavit does so intentionally or recklessly. *Id.* Brower thus was on notice that making knowingly false statements in warrant affidavits was unconstitutional at the time Mims swore out the affidavits. Brower cannot avoid potential liability at this stage just because he allegedly conspired with other persons to do something he clearly could not constitutionally have done directly. 42 U.S.C. § 1983 (creating liability for "subject[ing]" or "caus[ing] [someone] to be subjected" to a deprivation of constitutional rights).

Since Plaintiffs have plausibly alleged that Brower violated clearly established law, he is not entitled to qualified immunity at this stage as to Count I.

### 2. State-law claims

Brower argues that the state-law conversion claim in Count III is barred by sovereign immunity.[44] Plaintiffs concede this point.[45] Because their punitive damages claim is dependent on a viable state-law cause of action, Count IV is also subject to dismissal.

### B. Defendants' argument that Plaintiffs failed to state a malicious prosecution claim

Scarbrough and Mims are sued only in their individual capacities,[46] and do not assert that they are entitled to qualified immunity.[47] They and Brower argue that Plaintiffs have failed to state a claim for malicious prosecution.[48]

---

[44]   ECF 15-1, at 11–15.

[45]   ECF 19, at 3.

[46]   ECF 12, ¶¶ 2–3. Although the case caption indicates that Scarbrough is also being sued in his official capacity, the pleading's allegations make clear that he is only sued in his individual capacity. *Id.* ¶ 2; ECF 18, at 10.

[47]   *See generally* ECF 13.

[48]   *Id.* at 8–10; ECF 15, at 7–9. Scarbrough and Mims have withdrawn their argument that this claim is barred by the statute of limitations. ECF 21, at 2 n.2.

To withstand a motion to dismiss for failure to state a claim, "a complaint must [ ] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n,* 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). The facts alleged must "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

Plaintiffs characterize their malicious prosecution claim as based on "the procuring of arrest warrants and the seeking of indictments" by Defendants.[49] The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under [28 U.S.C.] § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). To state a Section 1983 claim for malicious prosecution, a plaintiff must show "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right

---

[49]   ECF 18, at 6 (emphasis omitted).

to be free from unreasonable seizures." *Wiggins v. Loar*, 760 F. App'x 965 (11th Cir. 2019) (per curiam) (citation omitted). Under Georgia law, "the constituent elements of the common law tort of malicious prosecution include[ ]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 881–82 (citing *Uboh v. Reno*, 141 F.3d 1000, 1002–04 (11th Cir. 1998)).

The FAC sufficiently alleges a Georgia-common-law claim for malicious prosecution: Plaintiffs were all charged with crimes based on an investigation driven by Scarbrough, overseen by Mims, and involving Brower.[50] As alleged, Defendants acted with malice, conspiring to fabricate evidence—including Mims's knowingly false affidavits—used to obtain arrest warrants and indictments.[51] Plaintiffs contend that Scarbrough specifically targeted Plaintiffs because of Jerri Macri and Danny White's financial success.[52] The criminal charges were ultimately nolle prossed.[53] The false charges deprived Plaintiffs of their liberty and allegedly

---

[50]   ECF 12, ¶¶ 19–23.

[51]   *Id.* ¶¶ 20–22, 44–45.

[52]   *Id.* ¶ 31.

[53]   *Id.* ¶ 52.

caused them financial ruin.[54] The pleading also alleges a violation of Plaintiffs'

Fourth Amendment rights "not to be deprived of liberty or property as a result of

fabrication of evidence by government officials acting under color of state law."[55]

Scarbrough and Mims contend that Plaintiffs have not alleged sufficient

facts to show that the false statements were integral to the probable cause needed

for the warrants to issue.[56] The Court disagrees. The FAC plausibly alleges that

every material statement used to secure the arrest warrants and indictments was

false because Plaintiffs had not committed any crimes. For instance,

- "Defendants falsely and deliberately misrepresent[ed] evidence and legal claims in order to secure warrants that resulted in the arrests of the Plaintiffs, the seizure of their assets and their malicious prosecution."[57]

- Defendants, working with others "to obtain search warrants, arrest warrants and, ultimately, indictments based on completely fabricated 'evidence' that would have never resulted in warrants or indictments had the affidavits been filled out completely and truthfully."[58]

---

[54]   *Id.* ¶¶ 23, 36, 53.

[55]   *Id.* ¶ 54.

[56]   ECF 13, at 9–10; ECF 21, at 4–5.

[57]   ECF 12, ¶ 12.

[58]   *Id.* ¶ 20.

- Mims falsely swore at least nine times that Jerri Macri was engaged in illegal commercial gambling.[59]

Such allegations are sufficient to show the false statements were necessary to a finding of probable cause.

The Court declines to consider Scarbrough and Mims's argument in reply that the pleading lacks sufficiently particularized allegations against Scarbrough.[60] The law is clear that "a court should not consider arguments raised for the first time in a reply brief." *Reliance Ins. Co. of Ill. v. Richfield Hosp. Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000). Moreover, the FAC plainly alleges that Scarbrough was the driving force behind the scheme to falsely prosecute Plaintiffs and that Brower and Scarbrough assisted and encouraged Mims to obtain the arrest warrants based on fabrications.[61] The fact that Mims was the one who made the statements rather than Scarbrough or Brower is not relevant to whether Plaintiffs have stated their claim when Defendants are alleged to have conspired to obtain the warrants based on those falsehoods.

---

[59]   *Id.* ¶ 21.

[60]   ECF 21, at 5–7.

[61]   ECF 12, ¶¶ 18–22.

Plaintiffs have stated a Section 1983 claim for malicious prosecution. Accordingly, their companion claim in Count II for attorneys' fees under Section 1988 is also viable.

### C.    Conversion

Scarbrough and Mims assert that the state-law conversion claim is barred by the limitations period.[62] The FAC alleges that Defendants acted with the "intent to permanently deprive" Plaintiffs of their property by confiscating it based on false allegations and refusing to return the property "once the prosecution had terminated in Plaintiffs' favor."[63] The parties agree that a four-year statute of limitation applies to this cause of action, but disagree as to when the claim accrued.[64] Scarbrough and Mims contend that the alleged conversion occurred when Plaintiffs' property was confiscated in July 2014.[65] Plaintiffs counter that the FAC made "crystal clear that their claims were not based on the initial confiscating of their property." Instead, their claim is based on the refusal to return that property after their cases were nolle prossed.[66]

---

[62]   *Id.* at 12–13.

[63]   ECF 12, ¶ 59.

[64]   ECF 13, at 12–13; ECF 18, at 10–11.

[65]   ECF 13, at 13.

[66]   ECF 18, at 10–11.

Under O.C.G.A. § 9-3-32, "[a]ctions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues." "The general rule for determining when a cause of action accrues and the statute of limitations begins to run is well-settled in Georgia: 'The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained [his or] her action to a successful result.'" *Scully v. First Magnolia Homes, Inc.*, 279 Ga. 336, 337 (2005) (quoting *Travis Pruitt & Assoc. v. Bowling*, 238 Ga. App. 225, 226 (1999)).

As alleged, Plaintiffs' conversion cause of action is based on the failure to return their property once the criminal charges against them had been dismissed. At the pleading stage, this is sufficient to indicate that Plaintiffs' cause of action did not accrue until the allegedly wrongful refusal to return their property occurred. Plaintiffs could not have successfully maintained an action for conversion while the criminal charges against them were still pending. *See, e.g., Kornegay v. Thompson*, 157 Ga. App. 558, 559 (1981) (indicating "demand and refusal" were necessary to show conversion and limitations period began to run from that date); *Wood v. Garner*, 156 Ga. App. 351 (1980) (same). Because Plaintiffs have stated a viable claim for conversion against Scarbrough and Mims, their cause of action for punitive damages is also viable. *OFS Fitel, LLC v. Epstein, Becker*

*& Green, P.C.*, 549 F.3d 1344, 1357 n.8 (11th Cir. 2008) (noting that a punitive

damages claim cannot survive without relief on an underlying claim) (citing

*Morris v. Pugmire Lincoln Mercury, Inc.*, 283 Ga. App. 238, 241 (2007)).

### III.   Conclusion

Brower's motion to dismiss [ECF 15] is **GRANTED in part** and **DENIED in**

**part**. Counts III and IV against him are **DISMISSED**. Scarbrough and Mims's

motion to dismiss [ECF 13] is **DENIED**. Defendants are **DIRECTED** to **ANSWER**

the First Amended Complaint within 14 days after entry of this Order.

**SO ORDERED** this 29th day of September, 2022.

_____
                    Steven D. Grimberg
           United States District Court Judge